DMJ:LTG

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

M-10 383

UNITED STATES OF AMERICA

    -against-

LAURIE SCHNEIDER,

                Defendant.

- - - - - - - - - - - - - - - - - - -X

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF ARREST
WARRANT

(T. 18 U.S.C. § 1343)

EASTERN DISTRICT OF NEW YORK, SS.:

        MATT GALIOTO, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such. Upon information and belief, in or about and between September 2006 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LAURIE SCHNEIDER did knowingly and willfully devise a scheme and artifice to defraud investors, and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice, and attempting to do so, transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures and sounds to wit: telephone calls and wire transfers for the purpose of executing such scheme or artifice.

(Title 18, United States Code, Section 1343).

The source of your deponent's information and grounds for his belief are as follows:[1]

1. I have been a Special Agent with the FBI for approximately 14 years and have participated in numerous investigations of violations of federal offenses committed using interstate wires. I am currently assigned to the White Collar Fraud Unit of the Long Island Office of the FBI.

**Introducton**

2. In or about March 2009, based upon information obtained from investor complainants, I became involved in an investigation of fraudulent activity using interstate wires. The activity involved a business operating in a manner consistent with what is commonly referred to as a "ponzi scheme." As it relates to this investigation, the defendant LAURIE SCHNEIDER engaged in a scheme to defraud investors by soliciting investors to invest in the purchase of industrial equipment and machinery manufactured in China for resale in the United States at a substantial profit (the "CHINA DEALS").[2] However, the investigation revealed that defendant SCHNEIDER actually used investor money to pay returns to

---

[1] Because the purpose of this complaint and affidavit is to state only probable cause to arrest the defendant, I have not described all the relevant facts and circumstances of which I am aware.

[2] Defendant SCHNEIDER solicited and obtained funds from investors for 9 CHINA DEALS.

investors who had invested in defendant SCHNEIDER'S earlier fraudulent CHINA DEALS and that defendant SCHNEIDER has never actually invested any money in the CHINA DEALS.

3. In addition to interviewing approximately 25 victim/investors, I have also reviewed a voluminous amount of documentary evidence including bank records, telephone records and corporate records and interviewed numerous non-victim witnesses.

**The Defendant and Companies**

4. Ultimate Sax and Sound Entertainment Corp. ("Ultimate Sax") was a New York State Corporation that provided entertainment services for corporate and private events from April 2002 until May 2008 and was located at 86 South Main Street, Freeport, New York.

5. All-Clean Janitorial Supplies LLC ("All-Clean") was a New York State Company that engaged in the sale of wholesale and retail janitorial supplies from June 2005 to the present and was located at 3399 Lawson Blvd., Oceanside, New York.

6. Eager Beaver Realty LLC ("Eager Beaver") was a New York State Company that engaged in the purchase and sale of residential real estate from May 2006 until the present and was located at 3399 Lawson Blvd., Oceanside, New York.

7. Janitorial Close-Out City Corp. ("Janitorial Close-Out") was a New York State Corporation that engaged in the sale of janitorial supplies from June 2006 until the present and was

located at 3399 Lawson Blvd., Oceanside, New York.

8. The defendant LAURIE SCHNEIDER was affiliated with Ultimate Sax, All-Clean, Eager Beaver and Janitorial Close-Out (the "SUBJECT COMPANIES") and held herself out to be an owner of the SUBJECT COMPANIES.

**The Scheme to Defraud**

9. Between September 2006 and February 2009, within the Eastern District of New York and elsewhere, the defendant LAURIE SCHNEIDER did knowingly and willfully devise a scheme and artifice to defraud investors, and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations and promises involving the CHINA DEALS.

10. To execute the scheme to defraud, defendant SCHNEIDER made contact with the victims either by telephone or in person and offered them the opportunity to invest in the CHINA DEALS. According to the victims, during these conversations, defendant SCHNEIDER explained that she had a business contact,[3] hereinafter referred to as John Doe #1 (JD #1), an individual whose identity is known to the U.S. Attorney's Office, who had strong relationships with companies in China that manufactured industrial equipment and machinery. Defendant SCHNEIDER further indicated that JD #1 was able to purchase the equipment and machinery at

---

[3] Defendant SCHNEIDER provided an actual name to the victim/investors.

wholesale prices and that these items would be resold in the United States at a substantial profit.[4] Defendant SCHNEIDER further advised the victims that they would realize a 30-70% profit over an eighteen month period, and, in some cases, advised that purchasers for the equipment and machinery had already been secured. Defendant SCHNEIDER also advised some victims that both she and JD #1 personally guaranteed a return of principle. Finally, in some written investment agreements SCHNEIDER guaranteed that 100% of the invested funds would be used to purchase machinery and equipment in China, guaranteed as much as a 30% return on investment and personally guaranteed a return of principle.

11. It was a further part of the scheme to defraud that defendant SCHNEIDER told the victims to wire money into a bank account controlled by defendant SCHNEIDER or personally deliver a check to defendant SCHNEIDER. Defendant SCHNEIDER then used the funds invested in the CHINA DEALS to pay returns on investments in other fraudulent schemes which pre-date the CHINA DEALS and to pay her personal expenses.

---

[4] On August 13, 2009, I interviewed JD #1 about the purported CHINA DEALS. JD #1 advised that he has no relationships with any companies in China, has never traveled to China for business and has never purchased any equipment or machinery in China or anywhere else.

**The Victims**

<u>Jane Doe #2</u>

12. JD #2, an individual whose identity is known to the U.S. Attorney's Office, advised that she invested in CHINA DEAL 2 with defendant SCHNEIDER after defendant SCHNEIDER advised that her business contact, JD #1, had strong relationships with companies in China that manufactured industrial equipment and machinery. Defendant SCHNEIDER further indicated to JD #2 that JD #1 was able to purchase the equipment and machinery at wholesale prices and that these items would be resold in the United States at a substantial profit.

13. JD #2 entered into an investment agreement wherein defendant SCHNEIDER agreed that 100% of JD #2's investment would be used to purchase machinery and equipment in China, guaranteed a 60% return on investment and personally guaranteed a return of principle.

14. Between June 4, 2007 and June 5, 2007, JD #2 wired $100,000 from her Citibank account into her Chase account[5] and then transferred the $100,000 into defendant SCHNEIDER'S Chase Bank account in the name of Janitorial Close-out (the "Janitorial Chase Account") for investment in CHINA DEAL 2. A review of bank records from the Janitorial Chase Account reveals that JD #2's investment was not used to invest in CHINA DEAL 2 but was used to pay returns of investment to investors in prior CHINA DEALS.

---

[5] This was an interstate wire transfer.

John Doe #3

15. JD #3, an individual whose identity is known to the U.S. Attorney's Office, advised that he invested in CHINA DEALS 4 and 9 with defendant SCHNEIDER, after being advised of JD #1's contacts in China which would allow for the purchase of equipment and machinery at reduced prices. To that end, JD #3 entered into an investment agreement with defendant SCHNEIDER wherein defendant SCHNEIDER agreed that 100% of JD #3's investment would be used to purchase machinery and equipment in China, guaranteed a 30% return on investment and personally guaranteed a return of principle.

16. On or about December 19, 2007, JD #3 wrote a check to Janitorial Close-out for $200,000 for investment in CHINA DEAL 4. Thereafter, defendant SCHNEIDER deposited the check into the Janitorial Chase Account. A review of the Janitorial Chase Account reveals that JD #3's investment was not used to invest in CHINA DEAL 4 but was used to pay returns of investment to investors in prior CHINA DEALS.

17. On or about January 6, 2009, JD #3 wrote a check to Janitorial Close-out for $100,000 for investment in CHINA DEAL 9. Thereafter, defendant SCHNEIDER deposited the check into the Janitorial Chase Account. A review of the Janitorial Chase Account reveals that JD #3's investment was not used to invest in CHINA DEAL 4 but was used to pay returns of investment to investors in prior CHINA DEALS (including $10,000 to JD #3 for CHINA DEAL #4).

<u>John Doe #4</u>

18. JD #4 advised that he invested in CHINA DEAL 9 after defendant SCHNEIDER advised him of JD #1's contacts in China which would allow for the purchase of equipment and machinery at reduced cost.

19. On January 14, 2009, JD #4 wired $50,000 for investment in CHINA DEAL 9 from a bank account in Las Vegas, Nevada into the Janitorial Chase Account. A review of bank records from the Janitorial Chase Account reveals that JD #4's investment was not used to invest in CHINA DEAL 9 but was used to pay returns of investment to investors in prior CHINA DEALS.

20. JD #4 has received no return on investment or return of principle from defendant SCHNEIDER.

21. Defendant SCHNEIDER is also under investigation for selling the identical ownership interests in Ultimate Sax and All-Clean to multiple investors and purporting to purchase residential properties with money invested in Eager Beaver when in fact some of the properties were never actually purchased. In total, it appears that defendant SCHNEIDER has defrauded investors of in excess of $9 million.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the arrest of the defendant LAURIE SCHNEIDER so that she may be dealt with according to law.

*[signature]*
MATT GALIOTO
Special Agent
FBI

Sworn to before me this
8th day of April, 2010

*[signature]*
A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK


    Because of the nature of this application, we further request that this application be sealed until further order of the Court.

_____
A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK